UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

American Association for Justice
a/k/a Association of Trial Lawyers of
America,

       Plaintiff,

v.                                                                    Civ. No. 07-4626 (JNE/JJG)
                                                               ORDER

The American Trial Lawyers
Association, Inc. a/k/a THE ATLA,
and J. Keith Givens,

       Defendants.

_____

Christopher K. Larus, Esq., and Busola A. Akinwale, Esq., Robins, Kaplan, Miller & Ciresi L.L.P., appeared on behalf of Plaintiff American Association for Justice a/k/a Association of Trial Lawyers of America.

Marshall H. Tanick, Esq., Mansfield, Tanick & Cohen, P.A., and James E. Robertson, Jr., Esq., James E. Robertson, Jr. LLC, appeared on behalf of Defendants The American Trial Lawyers Association, Inc. a/k/a THE ATLA, and J. Keith Givens.

_____

       American Association for Justice a/k/a Association of Trial Lawyers of America (AAJ) brings this actions against The American Trial Lawyers Association, Inc. a/k/a THE ATLA and J. Keith Givens (collectively "Defendants"). AAJ asserts claims of trademark infringement, unfair competition, and deceptive trade practices against Defendants. The case is before the Court on Defendants' Motion and Amended Motion to Dismiss, or in the Alternative, to Transfer Venue to the Middle District of Alabama, Southern Division. Because this Court has specific jurisdiction over Defendants and transfer is unwarranted, Defendants' motion and amended motion are denied.

## I. BACKGROUND

AAJ is a worldwide nonprofit corporation headquartered in Washington, D.C. It is an association of trial attorneys with over 56,000 members, including more than 500 members in Minnesota. AAJ operated under the name Association of Trial Lawyers of America until it changed its name to American Association for Justice in December 2006. Since 1976, AAJ has owned federally protected rights to the trademark ATLA®, which stands for "Association of Trial Lawyers of America." AAJ used the ATLA® mark to indicate membership in the association and in connection with the promotion and sale of its educational seminars and conferences.

Givens is an attorney who resides in Alabama. In late 2006, Givens and his two sons, John and Chase, conceived of an organization that would provide selected trial attorneys across the country with practical recognition and networking and educational opportunities. In 2007, The American Trial Lawyers Association (Association) was incorporated in Alabama, and the Association began using the terms "THE ATLA" and "THEALTA" to promote and sell membership in the Association and to promote its services. John and Chase Givens are the Association's sole directors. Keith Givens is an original member of the Association's Executive Committee. He also directs the legal matters of the Association and serves as its agent for service of process. In March 2007, Keith Givens, acting on behalf of the Association, applied to the United States Patent and Trademark Office (PTO) to register marks that incorporated the term "ATLA." In June 2007, the PTO refused to register one of the marks because of the likelihood of confusion with AAJ's existing marks. Defendants abandoned another application after the PTO refused to register that mark.

In November 2007, as part of its national membership solicitation efforts, the Association mailed up to 100 membership solicitation letters to selected attorneys in Minnesota. The letters identified the Association as "The ATLA" and promoted the Association as an "elite organization" that sought to "offer practical recognition, networking and educational opportunities, educational programs, and legal publications" to trial attorneys. The letters invited recipients to join the Association by returning an enclosed membership form and a $250 membership fee, indicated that membership would "extend through the year 2008," and stated that "[u]pon receipt of your enclosed information sheet and membership dues, a formal acceptance package with a certificate of membership into The ATLA and the Top 100 Trial Lawyers will be mailed to you." Eight Minnesota residents responded by returning a membership form and the $250 membership fee to a New York address identified in the letter. It is the Association's practice to send membership certificates and promotional materials to its members after their enrollment. AAJ subsequently brought this action seeking to protect its rights in the ATLA® mark.

## II.   DISCUSSION

**A.   Personal Jurisdiction**

Defendants argue they do not have sufficient minimum contacts with Minnesota to establish personal jurisdiction in this forum. Specifically, Defendants assert that they have no physical presence in Minnesota and that the membership solicitation letters sent to Minnesota residents are insufficient to support this Court's assertion of personal jurisdiction over them.

In order to defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party must make a prima facie showing of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2); *Romak USA, Inc. v Rich*, 384 F.3d 979, 983 (8th Cir. 2004). When considering

whether the nonmoving party has met this burden, a court considers not only the pleadings, but also the affidavits and exhibits presented for and against the motion. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004). For the purposes of a prima facie showing, a court must view the evidence in the light most favorable to the nonmoving party and resolve all factual conflicts in its favor. *See Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

Two prerequisites must be met to establish personal jurisdiction over a nonresident defendant. The forum state's long arm statute must be satisfied and the Due Process Clause must not be violated. *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 591 (8th Cir. 2001). Because Minnesota long arm statutes extend jurisdiction to the maximum limit consistent with due process, the Court need only evaluate whether the assertion of personal jurisdiction over Defendants satisfies the requirements of the Due Process Clause. *See id.*

Due process requires that a defendant have sufficient "minimum contacts" with the forum state such that summoning the defendant would not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The nonresident defendant's conduct and connection to the forum state must be such that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). This requirement "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum … and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472-73 (citations omitted).

4

The Eighth Circuit Court of Appeals has established a five factor test to determine whether minimum contacts exist sufficient to meet due process considerations: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. *Johnson*, 444 F.3d at 956; *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003). Because the first three factors are closely intertwined, they may be considered together. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995). The last two factors "carry less weight and are not dispositive." *Johnson*, 444 F.3d at 956; *see Pecoraro*, 340 F.3d at 562.

    *1.*    *The Association*

Through the affidavit submitted by one of its Directors in support of Defendants' motion, the Association asserts that a form letter sent in November 2007 inviting a Minnesota resident to join the Association is insufficient to establish minimum contacts between the Association and Minnesota. The affidavit also states that the Association does not have a physical presence in Minnesota and that, aside from the single form-letter solicitation for members, the Association has not called on anyone in Minnesota.

Following jurisdictional discovery, it is undisputed that the Association's contacts with Minnesota consist of up to 100 membership solicitation letters sent to Minnesota residents in 2007, as well as follow-up membership and promotional materials sent to the eight Minnesota residents who responded to the letters. It is also undisputed that each membership solicitation letter sent to a Minnesota resident identified the Association as "The ATLA." The letters invited recipients to join the Association by returning an enclosed membership form and a $250

5

membership fee and described various benefits and terms of membership in the Association. The membership certificate sent to attorneys who joined the Association included the Association's seal, which contains the words "The ATLA."

Defendants correctly point out that ordinarily, contact with a forum state by mail or phone, without more, is insufficient to justify the exercise of personal jurisdiction under the Due Process Clause. *Johnson*, 444 F.3d at 955; *Digi-Tel*, 89 F.3d at 523 (finding letters and faxes sent into forum insufficient by themselves to establish jurisdiction). However, it is well-established that mail or phone communications may justify the exercise of personal jurisdiction when the communications themselves give rise to the cause of action. *See Oriental Trading, Inc. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001). In its Complaint, AAJ alleges the Association's membership mailings, including those directed to Minnesota residents, contained content that infringes on AAJ rights in the ATLA® mark, intentionally confuses the consuming public as to the source of the membership and services offered by the Association, and falsely designates the origin of the Association's products. Thus, AAJ's causes of action against the Association arise directly out of the mailings sent to up to 100 Minnesota residents. This Court's assertion of specific personal jurisdiction over the Association is, therefore, supported. *See Multi-Tech Sys., Inc. v. VocalTec Commc'ns, Inc.*, 122 F. Supp. 2d 1046, 1051-52 (D. Minn. 2000) (stating in the patent infringement context that "[s]pecific personal jurisdiction depends on the nature and quality of the defendant's contacts with the forum, so obviously a case in which the contact itself is the wrong is a stronger case for jurisdiction than one in which the contact merely relates to the wrong."); *3M Co. v. Icuiti Corp.*, Civ. No. 05-2945, 2006 WL 1579816, at * 3 (D. Minn. June 1, 2006) ("Because in a trademark infringement action, the cause of action is directly related to the contacts between Defendants and the forum, personal jurisdiction is supported.")

An examination of the quality and nature of the Association's contacts with Minnesota further reveals that the Association purposefully directed communications and materials to individual residents of Minnesota in an attempt to cultivate membership relationships with them. In actively pursuing such business relationships with Minnesota residents, the Association should reasonably have anticipated being haled into a court in Minnesota to answer for its conduct. *See St. Jude Med.*, 250 F.3d at 591-92; *Northrup*, 51 F.3d at 1388-89. Viewing the record in light favorable to AAJ, the Court concludes that the first three factors support the exercise of personal jurisdiction over the Association. *See Johnson*, 444 F.3d at 956; *Pecoraro*, 340 F.3d at 562.

The Court further concludes that the fourth and fifth factors are neutral or slightly favor a finding of personal jurisdiction over the Association. While AAJ is not itself a resident of Minnesota, over 500 of its members reside in Minnesota and the Association targeted membership solicitation letters towards Minnesota residents. As for the convenience of the parties, as discussed below, this factor favors neither party. Thus, these secondary factors do not require a different jurisdictional determination. Accordingly, the Court concludes that AAJ has met its burden of making a prima facie showing that the Court has specific personal jurisdiction over the Association.

    *2.    J. Keith Givens*

The Court next considers the propriety of its assertion of personal jurisdiction over Givens. In his affidavit submitted in support of Defendants' motion, Givens states that he is not a shareholder or officer of the Association and that the extent of his formal legal connection to the Association is as the designated agent for service of process. He also states that he has never been to Minnesota or, to his knowledge, transacted any business in Minnesota on behalf of the Association or otherwise. Givens admits general involvement with the Association but contends

7

that he is not a "driving participant" in its activities as alleged by AAJ. He asserts that there are insufficient minimum contacts to support this Court's assertion of personal jurisdiction over him.

Although the Complaint alleges that Givens is a shareholder and officer of the Association, there is no support for this assertion in the record. Moreover, the Court acknowledges that a corporate officer's contacts with a forum state are not judged according to the corporation's activities there. *See Minn. Mining & Mfg. Co. v Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1122 (D. Minn. 1996), *aff'd*, 130 F.3d 1305 (8th Cir. 1997). The Court assesses the contacts between Givens and Minnesota on an individual basis. *See Calder v. Jones*, 465 U.S. 783, 790 (1984). The key inquiry is whether he was a "primary participant[] in an alleged wrongdoing intentionally directed at a … resident [of the forum state]." *Alternative Pioneering Sys., Inc. v. Direct Innovative Prod., Inc.*, Civ. No. 4-92-78, 1992 WL 510190, at *2 (D. Minn. Aug. 20, 1992) (citing *Calder*, 465 U.S. at 790 ).

During jurisdictional discovery, Givens testified as the Association's Rule 30(b)(6) designee. His deposition testimony revealed that he and his two college-aged sons conceived of and formed the Association together. The elder son, John, testified that his father's position as an Alabama attorney provided him and his brother with access to the legal community that led to the creation of the Association. Givens recruited the original members of the Association's Executive Committee, of which he was a member, and the Association's Executive Director is the wife of one of his law partners. The Association has enjoyed the use of office space controlled by his law firm and in buildings in which Givens has a financial interest without paying rent for that use (rent has accrued, but has not been paid). Although he could not recall whether he actually provided funding to the Association, Givens testified that he would have made his own personal funds available to the Association if he had been asked to do so.

Collectively, this evidence reveals Givens to be more than just an agent for service of process or a casual participant in the business activities of the Association.

As for direct participation by Givens in the infringing activities alleged by AAJ in this lawsuit, the Association's responses to discovery interrogatories specifically indicate that Givens was personally involved in the Association's decisions regarding the solicitations of membership to the Association, including directing solicitations to Minnesota residents. As previously discussed, mail communications may justify the exercise of personal jurisdiction when the communications themselves give rise to the cause of action. *See Oriental Trading*, 236 F.3d at 943. Givens testified that he personally signed some of the membership solicitation letters sent by the Association to prospective members, and he does not dispute that some of these letters were sent directly to Minnesota residents. By his own testimony, Givens establishes that he was an active participant in the planning and decision-making process that culminated in the creation and distribution of the solicitation letters to Minnesota residents. AAJ submits affidavits establishing that Givens had knowledge of AAJ's rights in the ATLA® mark at the time the membership solicitation letters were sent. There is no dispute that these letters identified the Association as "The ATLA" and promoted the Association as an "elite organization" that sought to "offer practical recognition, networking opportunities, educational programs, and legal publications" to trial attorneys.

Because a single contact with a forum state can be sufficient to establish specific personal jurisdiction, *Fulton v. Chicago, Rock Island & P.R. Co.*, 481 F.2d 326, 334-36 (8th Cir. 1978), the exact number of letters Keith Givens sent to Minnesota residents is not particularly relevant. *See Lakin v. Prudential Secs., Inc.,* 348 F.3d 704, 711 n. 10 (8th Cir. 2003) (indicating that when specific jurisdiction is being alleged, the quantity of contacts is not determinative). By

personally and intentionally directing allegedly infringing activity toward Minnesota residents, Givens should reasonably have anticipated being called to court in Minnesota to answer for his conduct. *See Calder*, 465 U.S. at 790-91. The Court concludes that AAJ has met its burden of making a prima facie showing that the Givens purposefully directed infringing activities at the residents of Minnesota, and showing that the nature and quality, and quantity of these contacts are sufficient to subject him to the specific personal jurisdiction of this Court.

In sum, the Court concludes that AAJ has met its burden of making a prima facie showing of specific personal jurisdiction over the Association and Givens. Defendants have not demonstrated that litigation in this forum would be unfair or unreasonable. Accordingly, Defendants' request for dismissal due to a lack of personal jurisdiction is denied.

**B.     Transfer to the Middle District of Alabama**

Defendants move alternatively to transfer venue of this action to the Middle District of Alabama, Southern Division, pursuant to 28 U.S.C. §§ 1406(a), 1404(a) (2000). Defendants argue proper venue lies in Alabama and not in Minnesota.

*1.      28 U.S.C. 1406(a)*

Section 1406(a) directs that a court "in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which the case could have been brought." 28 U.S.C. § 1406(a) (2000). In a civil action where jurisdiction is not founded solely on diversity, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2)(2000).

Plaintiffs argue that a substantial part of the events giving rise to their claims—namely the directing of up to 100 membership solicitation letters that infringed on AAJ's marks—occurred in Minnesota.  There is no dispute that Defendants sent similar solicitation letters to other states or that the Association has successfully recruited members from other states, including Alabama, in larger numbers than in Minnesota.  However, to determine whether venue is proper, a court does not ask which district among potential forums is the best venue. *Pecoraro*, 340 F.3d at 562; *Setco Enters., Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994). Instead, a court asks whether the district selected by the plaintiff had a substantial connection to the claim, without regard to whether other forums had greater contacts.  *Pecoraro*, 340 F.3d at 562; *Setco Enters.*, 19 F.3d at 1281.

Viewed in light favorable to AAJ, the record reveals that Minnesota has substantial connection to the claims AAJ asserts.  As discussed above, the Association and Givens sent membership solicitation letters into Minnesota for the purpose of inducing Minnesota residents to join the Association.  The Association admits that it sent follow-up membership materials to Minnesota residents who responded.  AAJ alleges that these communications infringed on its trademark rights and sought to falsely trade on the substantial goodwill established by AAJ in its marks.  Consequently, if harm occurred in Minnesota, a substantial part of the events giving rise to AAJ's claims occurred in Minnesota.  *See Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (Lanham Act case indicating that "the place where the alleged passing off occurred … provides an obviously correct venue"); *see also Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 182 (S.D.N.Y.1995) (noting that "[a]lmost all cases that have addressed the language of 1391(b) have construed it to mean that venue may be proper in more than one district" and that "in trademark infringement claims, courts have held that venue may be proper in each jurisdiction

where infringement is properly alleged to have occurred"). Under these circumstances, although Defendants' solicitation activities in another state may have been more substantial, the Court concludes that Minnesota has a substantial connection to the claims asserted by AAJ such that venue is proper here. Therefore, transfer under section 1406(a) for improper venue is unavailable.

    *2.*       *28 U.S.C. § 1404(a)*

Defendants also seek transfer to the District of Alabama pursuant to 28 U.S.C. § 1404(a), which provides "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party seeking a transfer ordinarily bears the burden of establishing that a transfer is warranted. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). A motion to transfer an action to another district should be denied unless the balance of factors strongly favors the moving party. *See Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999). The decision whether to transfer an action lies within the discretion of the district court. *Everett v. St. Ansgar Hosp.*, 974 F.2d 77, 79 (8th Cir. 1992).

In support of its motion to transfer, Defendants contend that the convenience of the parties and witnesses weighs heavily in favor of transfer of venue in this case. Defendants note that they are residents of Alabama and claim that virtually all of the witnesses for this case reside in Alabama. Defendants assert that the Association's documents are located there as well. Defendants further contend that none of the factors favor Minnesota as a forum and claim that the only basis for AAJ's maintaining this case in Minnesota is that its current president and a small percentage of its lawyer members reside in Minnesota.

After considering the factors outlined in *Terra International* and the relevant circumstances in this case, the Court concludes that Defendants have not made the required strong showing to support transfer of venue. AAJ is a District of Columbia organization that is run by volunteers and conducts its business in locations convenient to its leadership and members. AAJ's current president and over 500 of its members are residents of Minnesota. As many as 100 Minnesota residents received Defendants' allegedly infringing mailings. Eight Minnesota residents responded to the solicitations by sending membership forms and dues to the Association. On the other hand, Defendants are in Alabama and witnesses and records relating to the Association's activities and the membership forms and dues sent by Minnesota residents in response to the solicitations are located in Alabama and possibly New York.

Under these circumstances, the Court concludes that the convenience factor does not weigh in favor of either party because some level of inconvenience is inevitable in this case wherever the venue. While Defendants raise several points that would make the District of Alabama more convenient for them, they have not persuaded the Court that a transfer would result in any more than a shift of the inconvenience from Defendants to AAJ. Transfer is unwarranted under these circumstances. *See Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc.*, 114 F. Supp. 2d 856, 862 (D. Minn. 2000).

Defendants also argue that transfer will serve the interest of justice. Examination of the interest of justice can include considerations of judicial economy, obstacles to a fair trial, conflict of law problems, and advantages of having a local court determine local law. *Nelson v. Soo Line R. R. Co.*, 58 F. Supp. 2d 1023, 1027 (D. Minn. 1999). Defendants focus their argument on considerations of judicial economy asserting that transfer would allow this case to be joined with

an already existing parallel case between the Association and the American College of Trial Lawyers currently pending in the District of Alabama.  The Court is not persuaded.

A review of Defendants' supporting exhibits reveals the lawsuit currently pending between the Association and the American College of Trial Lawyers is a declaratory judgment involving the mark "AMERICAN COLLEGE OF TRIAL LAWYERS" and the Association's use of the name "The American Trial Lawyers Association."  The marks and infringing activities in the already pending Alabama case are different from the marks and infringement allegations in the instant lawsuit.  The Court concludes that Defendants have failed to sufficiently substantiate their claim of  "parallel cases" or demonstrate that the two cases involve "substantial overlap."  Thus, Defendants have not demonstrated that the interest of justice strongly favors transfer.  Because Defendants have failed to meet their burden of establishing that a transfer is warranted under section 1404(a), the Court denies their alternative motion to transfer venue.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue to the Middle District of Alabama, Southern Division [Docket No. 6] and Amended Motion to Dismiss, or in the Alternative, to Transfer Venue to the Middle District of Alabama, Southern Division [Docket No. 11] are DENIED.

Dated:  July 1, 2008

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge